This is a suit by the plaintiff as receiver of the Merchant's National Bank of Mandan on three promissory notes executed by the defendant. The actions were consolidated at the trial, were tried to the court and resulted in judgments for the full amount of the notes. The defendant appeals.
On April 25, 1922, the Merchants National Bank executed to the city of Mandan a depositary bond in the sum of $50,000. The defendant Stutsman was a surety on this bond with two other individuals. On December 21, 1923, the bank became insolvent and was closed by the comptroller of the currency. At the time the bank closed, the city of Mandan had a deposit therein in the sum of $43,359.78. The plaintiff Storing was appointed receiver on December 26, 1923. Thereafter the bank paid a dividend of 15 per cent. *Page 703 
On March 26, 1923, the defendant executed his promissory note in the sum of $3,195.56 due in six months; on November 2, 1923, another note for $625, due one year after date; on July 2, 1923, he executed another note for $1,000 due in six months; and on November 21, 1922, he executed a note for $500 due in one year. Each note bore interest at the rate of 8 per cent per annum.
On September 22, 1924, the plaintiff commenced an action on the largest note and on June 30, 1925, he sued upon the other three notes in one action. The same answer was interposed to both complaints, alleging substantially, the execution of the indemnity bond, the deposit by the city as aforesaid, the insolvency of the bank and its failure to repay the deposit, demand of the city on the defendant for the sum of $12,500 as his share of liability under bond and his liability therefor, and concluding with the prayer that the plaintiff be required to pay the obligation or to indemnify the defendant against his liability and that in the meantime the plaintiff be restrained from prosecuting the action. It was further prayed that, in any event, the proceedings be stayed until defendant's liability should be ascertained so that he might pay it and plead payment as a set-off in the action. The answer also contained a general prayer for equitable relief.
The two actions were tried together and it was stipulated that the same evidence be used in both cases, and that the appeals be submitted on the same record.
After the service of the answer in the first action and before the second action was commenced, the city of Mandan accepted a secured note of the defendant of the face value of $4,000 as a reduction of his liability in that amount, that is, this note was, by resolution, accepted as payment in the sum of $4,000; thereafter the defendant filed a supplemental answer alleging the payment of this amount and asking that it be set off against the note in the first action and that that action be dismissed. This payment was sought to be applied and was intended to apply in the first action only, and has nothing to do with the second action upon three smaller notes, although the findings erroneously so state.
The trial court held against the defendant, largely upon the authority of Gilbertson v. Northern Trust Co. 53 N.D. 502,207 N.W. 42; and United States Fidelity G. Co. v. Wooldridge,268 U.S. 234, 69 L. *Page 704 
ed. 932, 40 A.L.R. 1094, 45 Sup. Ct. Rep. 489. In the opinion of the trial court a set-off could not be allowed because the result would be a preference within the prohibition of the Federal statutes. The position of the defendant, both in the trial court and on appeal, is that under general equitable principles, and particularly § 6684, Comp. Laws 1913, the plaintiff cannot maintain these actions until he has indemnified the defendant against loss, by reason of his liability as surety; and, further, that when the surety has performed the obligation he may in equity set off the payment against his own debt to the plaintiff, notwithstanding the insolvency. The appellant concedes that his right to set-off must be governed by the "state of things," existing at the time of the bank's insolvency; and that were he relying on the right of subrogation or on an assignment from the obligee in the bond, that is, the city of Mandan, he would then be asserting rights acquired subsequent to the insolvency with the result that a preference would follow within the condemnation of the Federal statutes. The defendant seeks to distinguish the Gilbertson and the Wooldridge Cases, supra, from the situation presented on this appeal on the theory that in the cases mentioned, the defendants rested their claims upon the principle of subrogation, either avowedly or necessarily under the facts. The defendant insists that no case can be found where the surety is denied the right of set-off under a statute giving the surety the right to compel the principal to perform except where there was a total absence of mutuality of accounts. He contends, in the case at bar, that there was a mutuality of accounts; that his right to set-off did not come into being by reason of the insolvency, but existed from the time he entered into the surety undertaking. He contends that the cases, supra, and others principally relied on by the plaintiff, proceed upon different facts requiring the application of different principles; that there the sureties were attempting to set off suretyship debts which they had paid against debts for which they were liable merely as sureties; while in the case at bar, the surety seeks to set off a payment made by him as a surety against his own "primary" debt or obligation owing on a promissory note to the bank. The defendant asserts that this differentiation is distinctly pointed out and recognized as of controlling importance in many cases, including Cosgrove v. McKasy, 65 Minn. 426, 68 N.W. 76. In that case one of the Cosgroves was a surety on a county depositary bond and after the *Page 705 
insolvency of the bank, he paid the balance due on the deposits; he then petitioned the court to adjudge that the amount so paid be declared a set-off against a note which he had executed to the bank prior to the insolvency and which note had passed to the assignee for the benefit of creditors and further asked that the assignee be directed to surrender the notes on payment of the balance due thereon after deducting the amount of the claimed set-off. The supreme court held that he was entitled to the set-off. In this case the court says: "We have stated that the court was right in holding that the petitioner last mentioned (J.R.S. Cosgrove) was entitled to an off-set. The case of St. Paul M. Trust Co. v. Leck, 57 Minn. 87, 47 Am. St. Rep. 576, 58 N.W. 826, is authority upon this point." There is no discussion in the Cosgrove Case of the legal principles on which the conclusion reached is based. We must, therefore, go back to the Leck Case to ascertain just what was there decided. In that case an assignee of an insolvent bank brought suit against McLeod as maker of a promissory note; Leck was an endorser. McLeod interposed a claim upon a certificate of deposit, which had not matured at the time of the insolvency, as an equitable set off. The assignee took the position that while the set-off might possibly have been allowed had the bank, while insolvent, brought suit on the note, the assignment operated to cut off that right by reason of the supervening equities of general creditors. The court refused to hold that the assignment enlarged in such a manner and to such an extent the effect of the insolvency, saying: "We are convinced that the better rule is that an equitable set-off which the debtor of an insolvent has at the time the latter stops payment is not affected or altered by the assignment." Manifestly, the questions in the Leck and the Cosgrove Cases grew out of essentially different facts. In the former case there was no question of suretyship, or the bearing of the Federal statutes against preferences. Had there been no Smith decision, the defendant, in the case at bar, would not have cited the Leck Case as authority in his behalf. Obviously, it is not in point upon any question here involved, and the rule of law there laid down is unquestionably sound. The result is that the holding in the Cosgrove Case is materially weakened as authority because it is made to rest on an erroneous assumption as to the controlling effect of a prior decision.
The contention of the defendant, that the case at bar must be *Page 706 
distinguished from the Gilbertson and the Wooldridge Cases, supra, because here a "primary obligation" constitutes the basis of the plaintiff's cause of action, whereas in the cases mentioned, a surety debt was sought to be off-set against a surety obligation, in order to be availing must lead to the conclusion that the defendant acquired rights, as against the creditor, that is, the insolvent bank, of which the subsequent insolvency of the principal in the bond could not divest it; that is, in order to escape the controlling force of the cases cited, he must demonstrate that he acquired rights under and by virtue of the contract of suretyship which the insolvency could not affect and which may be enforced subsequent to insolvency without resulting in a preference within the condemnation of §§ 9821, 9823 and 9824, U.S. Comp. Stat. It, therefore, becomes necessary, at the threshold of the discussion, to ascertain precisely what rights the surety acquired, as against the principal in the bond, by virtue of the suretyship contract. Article 3, chapter 85 of the Civil Code, defines the rights of sureties (Comp. Laws 1913, §§ 6682, 6683). The surety has all the rights of a guarantor, § 6682; he may require the creditor (here the city of Mandan) to proceed against the principal, or to pursue any other remedy in his power, not available to the surety, which would lessen his burden, § 6683; he may compel the principal (the insolvent bank here) to perform the obligation, when due, § 6684; if the surety satisfies the obligation, the principal must reimburse him to the extent of his damage; upon satisfying the obligation, the surety is entitled to enforce every remedy which, at the time of the satisfaction, the creditor had against the principal to the extent necessary to reimburse him; and the surety is entitled to full subrogation (§§ 6685-6687). The foregoing are substantially the rights of the surety as defined in the statutes. They are rights of equitable origin and cognizance, and do not, at least not for the purpose of the present discussion, differ from the rights which equity enforced in behalf of the surety prior to the statute. Our attention is called to these rights of the surety by the defendant in his brief and in the oral argument and it is insisted that the ground-work or basis of these remedies is the "implied obligation of the principal to save the surety harmless." It must be conceded that, in the main, the contention is sound.
The difficulty arises when it is attempted to apply the principles to *Page 707 
the facts in the manner and with the effect urged by the defendant. The surety may unquestionably compel the principal to perform the obligation when due; but in the case at bar, he could not, under his contract, or under the statutes, compel the bank to pay or the city to receive the deposit before it became due, or before demand by the city. There was no demand by the city before insolvency; immediately when the bank became insolvent, the deposit was due and the rights of the defendant as surety became fixed. However, at the same moment of time the rights of creditors and of the receiver became fixed and the Federal statute intervened, raising a barrier against any disposition of the assets of the insolvent constituting a preference as therein defined.
Undeniably, the surety may require the creditor to proceed against the principal or pursue any other remedy in his power; but in this case that was not done. The defendant did not suggest that the city of Mandan proceed to recover the deposit at any time before insolvency; and it may well be questioned if, in the circumstances disclosed, he could have accelerated the movements of the creditor in this regard.
It is, also, the duty of the principal to reimburse the surety if the latter satisfies the obligation.
The defendant has not made clear on what principle of law he rests his claim to a right to an off-set here, merely because his obligation is "primary," as he describes it, whereas, in the cited cases, which he concedes to be sound, the basis of the cause of action was a suretyship debt. In what sense defendant employs the term "primary" is not clearly discernible from his argument. The surety is, of course, an original promisor from the beginning; and, in the ordinary meaning of that term, his liability is no more secondary than is that of the maker of a promissory note. The city of Mandan, however, had, and could have, no right of action against the defendant until the principal had failed, upon demand, to repay the deposit; that failure took place and, consequently, the cause of action, in behalf of the city and against the defendant, came into being at the moment when insolvency took place; and at the same instant the rights of creditors of the principal to a distribution of its assets without discrimination or preference became *Page 708 
as absolutely fixed as the rights of the defendant which flowed from the suretyship relation.
In its essence, the argument in behalf of the defendant rests on the doctrine of relation. It is said that there having been a primary obligation, under the suretyship contract, to repay the deposit, the right of the surety to a set-off related back to the date of that obligation and that not the note but the balance
after deducting from it the amount discharged under the contract of suretyship, represents assets which must be distributed ratably and without discrimination. Defendant then says that Scott v. Armstrong, 146 U.S. 499, 36 L. ed. 1059, 13 Sup. Ct. Rep. 148, is conclusive in his favor.
It solves nothing to cite the equitable doctrine of relation. That legal fiction originated in a desire to do justice, and resort cannot be had to it when the result is to defeat the rights of third persons lawfully acquired. Gilbertson v. Northern Trust Co. 53 N.D. 502, 207 N.W. 42, supra. The question on which the instant case turns can be correctly answered only by an examination of the rights of the surety and a determination of the point of time when they became fixed. If the surety had a right to a set-off, which had accrued or become fixed prior to insolvency, it would in no manner be affected by the bank's closing its doors. Suppose that prior to insolvency the bank had sued the defendant on the notes in suit and while the city of Mandan was a depositor, but before demand or refusal to repay the deposit; could he have set up his "primary obligation," as he describes it, on the bond to defeat, reduce or delay recovery on the notes? Clearly not. The two transactions are wholly lacking in that quality or degree of mutuality essential to the right of set-off. There is no connection between the two demands; and while courts of equity often depart from the strict rule of mutuality, all the decisions seem to require that the mutual obligations must have grown out of the same or had a logical connection with a common transaction. This is distinctly pointed out in Scott v. Armstrong, supra.
Were it not for the fact that the defendant strongly insists that Scott v. Armstrong, supra, is decisive in his favor, we should not feel justified in giving it extended attention. Armstrong as receiver of the Fidelity Bank, brought suit against Scott and the Farmers Bank on a promissory note for $10,000 dated June 6, 1887, due September 6, *Page 709 
1887. Scott was cashier of his codefendant, and pleaded that he signed the note for the accommodation of the Farmers Bank and with the understanding that he would not be expected or required to pay. The Farmers Bank pleaded the following among other facts in the nature of a set-off: "That the Fidelity Bank lent the Farmers' Bank the $10,000 at a discount at the rate of 7 per cent per annum, for ninety days, under an agreement that the money so borrowed, less the discount, should be placed to the credit of the Farmers' Bank on the books of the Fidelity Bank; that the note in suit was executed accordingly, dated and discounted on June 6, 1887, and the proceeds, $9,819.17, were placed to the credit of the Farmers' Bank upon the books of the Fidelity Bank, to meet any checks or drafts of the Farmers' Bank, and to pay thenote when it became due." Demurrers were interposed to the pleas of both defendants.
The facts were, as appears from the emphasized portion, supra, that "the credits between the banks were reciprocal and were parts of the same transaction, in which each gave credit to the other on the faith of the simultaneous credit, and the principle applicable to mutual credits applied," said the court. It follows that it was "the balance upon the adjustment of the accounts which was the debt, and the Farmers' Bank had the right . . . to set off the balance due upon its deposit account. . . ." The court held that there was presented a case of mutual accounts and that to permit the off-set to be made would not result in a preference contrary to the Federal statutes. The court said: "Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends, is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."
No further discussion seems necessary in order to demonstrate the essential difference between the facts in the case at bar and in Scott v. Armstrong. The case before us lacks nearly every necessary element of mutuality, under the most liberal rule applied in courts of equity. The obligation under the note in suit and that arising by virtue of the contract of suretyship, spring from disconnected, dissimilar and *Page 710 
wholly unrelated transactions. There is not one circumstance in this case which suggests that the defendant assumed the obligation of a surety in the expectation that later he would borrow from the depository and meet his liability on the instrument evidencing the indebtedness by any possible liability as surety on the bond. No facts have been drawn to our attention which raise the presumption of an agreement that a set-off could, in any circumstances, be asserted.
We are constrained to the conclusion that the principles of law applied in Gilbertson v. Northern Trust Co., and in Wooldridge Case, 268 U.S. 234, 69 L. ed. 932, 40 A.L.R. 1094, 45 Sup. Ct. Rep. 489, are controlling.
The judgment must be and it is affirmed.
CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and BIRDZELL, JJ., concur.