## McCANDLESS v. DYAR.

District Court, S. D. South Dakota. August 4, 1928.

No. 1239.

eral certificates of deposit set forth in the answer, payable 12 months after date. The defendant and five others guaranteed the payment of the certificates "at any time after maturity" by indorsement thereof before delivery. May 1, 1926, said bank suspended and went into the hands of a receiver. The defendant and other indorsers paid the amount due on the certificates, and the holders transferred the certificates to the defendant and others paying them, and they each have a claim, respectively, against the bank for the amount so paid. On March 5, 1926, a note for $2,000 was executed by the defendant, payable May 5, 1926, and delivered to the said Desmet National Bank, and plaintiff, as receiver of said bank, has instituted this action to recover the balance due upon this note, filing a complaint with necessary allegations, and the answer of the defendant admits the material allegations of the complaint, and pleads, in substance, that in addition to the issuance of the certificates of deposit at the instance and request of the said Desmet National Bank, the defendant at the time of the execution thereof indorsed the certificates as follows: "I hereby guarantee payment of the within certificate at maturity, and waive presentment for payment, protest, notice of protest and nonpayment, and guarantee its payment at any time after maturity." That at the time of said indorsement defendant owed said bank the sum of $8,080, and it was then and there agreed by and between the defendant and the said bank, as a part of the consideration for said indorsement, that said bank would indemnify defendant against any and all loss by reason of his executing said indorsement, and further agreed that if said defendant was compelled to pay said certificate by reason thereof, the amount of such payment would be credited upon any indebtedness of defendant to said bank. The answer then alleges, in substance, that the bank failed to pay the certificates, and after the suspension of the bank, June 30, 1926, defendant by reason of said indorsement was compelled to and did pay the amount due thereon, which sum has never been repaid to him by the bank, and defendant has never received credit upon his indebtedness to the bank therefor except certain payments (which the court assumes refers to the dividends that have been paid upon the general claims respectively).

A demurrer was filed to this answer, and it is now suggested by counsel that the questions presented are such that the case should be in equity instead of at law, and it is ordered that the demurrer may be considered

M. G. Luddy, of Sioux-Falls, S. D., for plaintiff.

Hall, Purdy & Eidem, of Brookings, S. D., for defendant.

ELLIOTT, District Judge. I have considered the issues presented by the demurrer to the answer in Re McCandless, Receiver, etc., v. Dyar, and am of the opinion that the demurrer must be sustained.

It appears from the allegations of the pleadings that the Desmet National Bank, of which plaintiff is the duly appointed receiver, on February 13, 1926, issued the sev-

as a motion to dismiss, on the equity side of the court.

The simple question presented here is: Has this defendant the right of set-off under the circumstances pleaded in this action, brought by the receiver upon his indebtedness to the bank? In the determination of this issue we can have little concern for decisions of courts in controversies in the various states growing out of the insolvency of mercantile or other establishments or individuals, allowing a surety who, after insolvency and assignment for benefit of creditors, has paid the debt of his principal to offset such payment against his indebtedness to the principal whose affairs were being administered by the assignee or other officer. The right to the allowance of such an offset in the case at bar must be determined in the light of the statutes of the United States controlling suspended national banks in the hands of a receiver appointed by the Comptroller of the Currency, and especially the provisions of the United States statutes prohibiting preferences in the liquidation of national banks.

It is conceded by counsel that the right of the defendant urged here must be interpreted in the light of the circumstances existing at the time of the insolvency of a national bank, and not by rights accruing by assignment, purchase, or subrogation after the appointment of a receiver. The right to set-off is governed by conditions as they existed at the moment of insolvency and not by conditions thereafter created. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Yardley v. Philler, 167 U. S. 344, 17 S. Ct. 835, 42 L. Ed. 192.

There is no difficulty in applying this rule to cases where claims against a national bank are purchased after such insolvency or the appointment of a receiver and an attempt then made to offset such purchased claims against indebtedness due from the purchaser. The effect of defendant's pleadings is, and he now urges, that because of the circumstances attending the execution of the guaranty set forth in the pleadings, his relation to the bank and his relation to the receiver thereafter appointed gave him greater rights than those acquired by one purchasing the claim after suspension. He insists that his rights came into existence at the time he indorsed the certificates, and that the rights which he acquired at the time he paid his share of the certificates, whether they arose by virtue of the contract or subrogation, relate back to the time when he indorsed the certificate. Defendant therefore urges that the rule above stated is not ap-

plicable to him and that his right of set-off arises under and by virtue of the contract with the bank at the time of the indorsement of the certificate by the defendant that as a part of the consideration for said indorsement the "said bank would indemnify defendant against any and all loss by reason of his executing said indorsement," and further agreed "that if the said defendant was compelled to pay said certificate or any part thereof by reason of said indorsement, the amount of such payment should be credited upon any indebtedness of said defendant to said bank."

In my judgment, it does not matter whether defendant is considered as a guarantor or as a surety. The provisions of the Revised Code 1919, § 1505, give a surety all rights of a guarantor. He may require the creditor to proceed against the principal or to pursue any other remedy in his power not available to the surety which would lessen his burden, and in case the creditor fails to do so the surety is exonerated to the extent of his prejudice. Id. § 1506. He may compel the principal to perform the obligation when due. Id. § 1507. The principal must reimburse him if the obligation is satisfied to the extent of his damage, and he is entitled to enforce every remedy which at the time of the satisfaction the creditor had against the principal to the extent necessary to reimburse him. He is also entitled to subrogation. Id. §§ 1508–1510.

These provisions of the statute add little, if anything, to the rights which a court of equity will enforce in behalf of the surety even in the absence of Code provisions. Under the provisions of this guaranty pleaded, the defendant was not in a position to compel the bank to pay the certificates before they were due, or to compel the payee therein named to receive payment before it became due. By the terms of the agreement pleaded, there was and could be no demand by the payee for payment prior to the insolvency of the bank, and in the absence of insolvency, prior to one year from the date of issuance, February 13, 1926. As a matter of law, however, upon the insolvency of this bank and the appointment of the receiver, these certificates, together with all obligation of the bank, became due and payable upon its suspension, May 21, 1926, and the rights of the parties to this suit must be adjudicated as of that date, and they must be determined in the light of the interests of the creditors of the bank, and in the light of sections 9821, 9823, 9834, U. S. Comp. St. (12 USCA §§ 91, 192, 194). These statutes

were enacted for the purpose of preventing any disposition of the assets of a national bank which constitute a preference as defined in said sections. The Supreme Court of the United States in U. S. Fidelity & Guaranty Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094, disposes of every question in this case, in my judgment. Justice Holmes in that opinion said, in part: "The two bonds were wholly independent transactions and were not brought into mutual account by any agreement of the parties. The Guaranty Company after the insolvency of the bank could not have bought a claim against the bank and used it in set-off. [Citations.] The receiver contends that that is the position of the defendant here, because it was only a guarantor and was only liable upon the default of the president of the bank that produced the insolvency. The court below treated the claim of the railway company against the bank as acquired by the defendant after the insolvency. The defendant, however, contends that upon its payment to the railway company its subrogation related back to the date of its contract; and we will assume for purposes of argument that this is true. But suppose it is, the right of the railway company was simply that of a depositor—a right to share with other unsecured creditors in the assets of the bank, of which the bond now in suit was a part. There would be no equity in allowing the railway company a special claim against this bond. We will assume that if the railway company had insured the honesty of the bank's officers the bank might have offset the obligation of the company against its claim as a depositor. But it is impossible to treat the succession of the defendant to the railway company's claim as effecting such an absolute identification with the railway company that one and the same person insured the bank and made the deposits. The doctrine of relation 'is a legal fiction invented to promote the ends of justice. * * * It is never allowed to defeat the collateral rights of third persons, lawfully acquired.'"

In Re United States Fidelity & Guaranty Co. v. Maxwell, 152 Ark. 64, 237 S. W. 708, 711, the following language is used: "The law is well settled that where there is a statute prohibiting preferences in claims against insolvent corporations, claims acquired after insolvency or after the appointment of a receiver cannot be set off against debts owing to the corporation in the hands of the receiver for collection, for if the law were otherwise the statute against prefer-

ences could be defeated by the purchase of outstanding claims and having them allowed in full as a set-off. The right of set-off exists only to the extent of the concurrence of the two claims, and in case of insolvency proceedings under a statute prohibiting preferences the concurrence of claims must have existed before the insolvency occurred and the proceedings were instituted. [Citations.] In that case a depositor in an insolvent bank sought to set off his claim against his own liability to the bank on a promissory note, and we held that he was entitled to do so on the ground that his right to set-off existed at the time that the affairs of the bank passed into the hands of the receiver and that the right was still intact. The converse of that doctrine is that if his right of set-off did not exist at the time the receiver took charge he could not have acquired the right. The question then arises whether appellant's claim against the bank arose prior to the insolvency of the bank or the taking over of its affairs by the commissioner. Our conclusion is that the claim in favor of appellant did not arise until after the bank commissioner took possession of the insolvent bank and that the claim is not available as a set-off against appellant's liability under the bond." And the Supreme Court of Arkansas concludes this opinion with the assertion that the set-off, if allowed, would constitute a preference upon a claim against the bank acquired subsequent to the time the bank became insolvent and passed in the hands of the receiver.

■■ Defendant seeks to avoid the force of these decisions by urging that because there was an oral agreement as a part of the consideration for the indorsement of the certificate by the defendant, the bank would indemnify defendant against any and all loss by reason of his executing said indorsement, and further agreed that if defendant was compelled to pay said certificate or any part thereof by reason of said indorsement, the amount of such payment should be credited upon any indebtedness of the said defendant to said bank. There was mutuality of contract between the defendant and the bank that would not exist but for this agreement. In the first place, if this agreement was made in contemplation of insolvency it would be void, and in my judgment an attempt to constitute a preference in this way must have been made in the light of the provisions of the statutes of the United States prohibiting such a preference, and in event of insolvency is inoperative. That is, assuming that these provisions have any force other

than the indorsement would have carried without them. The agreement does not attempt to fix any present liability of the bank to the defendant. It was only that the bank would indemnify the defendant against loss and that if the defendant was compelled to pay the certificate or any part of it by reason of said indorsement the amount of such payment should be credited upon any indebtedness of the said defendant to said bank. Clearly, this amounted, first, to an agreement by the bank to indemnify the defendant, and second, if the defendant was compelled to pay, there was no indebtedness of the bank to the defendant, simply an agreement that if there was a default in the payment when it became due then the defendant should have certain rights. The defendant had no claim against the bank until there was a default. The certificate was not due at the time of the suspension of the bank. · By suspending, the obligations of the bank, including these certificates became due, and at the same time and by the same act the provision with reference to the right to offset in favor of this defendant became operative. Its operation, however, is prevented by the provisions of the United States statutes above referred to. The fact that the defendant was the surety of the bank, that the bank had promised to indemnify him and had promised to permit set-off, did not, in law, make the defendant a creditor of the bank upon the execution of the instruments. He could not become such creditor until he had paid something for which he might claim reimbursement. By paying the claim after suspension of the bank the defendant's position is in no material sense other or different than if he had purchased it after such suspension. I am of the opinion that to permit the defendant to offset, against the demand here sued upon, the amount paid by him as surety upon said certificates after the suspension of the bank, would enable him to secure an illegal advantage over other creditors in the distribution of the assets of the insolvent bank.

Defendant urges the mutuality of this indorsement because of this agreement, and therefore that the facts in this case are not governed by the decision of Justice Holmes in Re U. S. Fidelity & Guaranty Co. v.

Wooldridge, supra. I am of the opinion that this agreement adds nothing to the rights of the parties. In the absence of insolvency, or in the absence of these United States statutes, a surety, in a court of equity, would be protected to the full extent of the terms of this agreement. There was only a conditional liability on the part of the defendant, and there is nothing in the agreement that affects his indorsement or his liability or changes the time that it becomes operative. His status, as far as the demand upon the bank was concerned, was no other or different than if the agreement had not been made. When he signed his guaranty and made the alleged agreement, there was then only a possibility that in a certain future contingent event, to wit, that the bank failed to pay the certificate, and upon payment of the same by him he would have a demand. This, it seems to me, is far short of a debt due and such a claim does not constitute the mutuality required for set-off.

The Supreme Court of North Dakota, in Re Storing v. Stutsman, 54 N. D. 701, 210 N. W. 653, 655, interpreting the rights of a defendant under circumstances almost identical with those set forth in the answer herein, said, in part: "In order to escape the controlling force of the cases cited, he must demonstrate that he acquired rights under and by virtue of the contract of suretyship which the insolvency could not affect and which may be enforced subsequent to insolvency without resulting in a preference, within the condemnation of sections 9821, 9823, and 9824, U. S. Compiled Statutes." And further: "Immediately when the bank became insolvent, the deposit was due and the rights of the defendant as surety became fixed. However, at the same moment of time, the rights of creditors and of the receiver became fixed, and the federal statute intervened, raising a barrier against any disposition of the assets of the insolvent [institution], constituting a preference, as therein defined."

It follows that I am of the opinion that the demurrer or motion to dismiss should be sustained. You may prepare and forward proper order of dismissal, with an exception to the defendant.