**THOMAS v. POTTER TITLE & TRUST CO.**
No. 6988.

District Court, W. D. Pennsylvania.
July 13, 1932.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

Howard Zacharias, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

The Bank of Pittsburgh, National Association, is a corporation existing under the national banking laws (12 USCA § 21 et seq.). It closed its doors September 21, 1931. The plaintiff was duly appointed receiver thereof. The Potter Title & Trust Company, defendant, is a corporation of the state of Pennsylvania. Under its charter it transacts a banking business and acts as trustee. On the date that the Bank of Pittsburgh, N. A., closed, it had on deposit in the Potter Title & Trust Company $135,787.39 of its own funds in its own name. On the same date the Potter Title & Trust Company had on deposit in the Bank of Pittsburgh, N. A., $46,887.49 in an account designated "Potter Title and Trust Company Trust Account," which deposit represented funds of various estates of which the Potter Title & Trust Company was trustee. Since the Bank of Pittsburgh, N. A., closed, plaintiff has withdrawn from its deposit in the Potter Title & Trust Company $88,890, leaving a balance of $46,897.39. Plaintiff demanded of defendant the balance aforesaid, which defendant refused to pay on the ground that defendant had a right to set off against this amount the deposit defendant had in the Bank of Pittsburgh, N. A. Plaintiff then brought this action in assumpsit to recover the balance aforesaid. The parties waived a jury trial and agreed upon a statement of facts and further that, if the court found that defendant did not have the right to set-off, judgment should be entered in favor of plaintiff in the sum of $46,897.39, with interest from September 21, 1931, and, if defendant was entitled to the set-off claimed, that judgment should be entered in favor of defendant.

Is defendant entitled to the set-off claimed? What laws shall govern in the determination of this question, the laws of Pennsylvania or the laws of the United States?

Rev. St. § 721 (28 U. S. C. § 725 [28 USCA § 725]) provides: "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

In Swift v. Tyson, 16 Pet. 1, 19, 10 L. Ed. 865, a leading case, the Supreme Court, in construing the above act, said: "And we have not now the slightest difficulty in holding, that this section, upon its true intendment and construction, is strictly limited to local statutes and local usages of the character before stated, and does not extend to contracts and other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence. Undoubtedly, the decisions of the local tribunals upon such subjects are entitled to, and will receive, the most deliberate attention and respect of this court; but they cannot furnish positive rules, or conclusive authority, by which our own judgments are to be bound up and governed."

In Gray v. Rollo, 85 U. S. (18 Wall.) 629, 632, 21 L. Ed. 927, the Supreme Court said: "In Pennsylvania, it is true, set-off is allowed in cases where the claims are not mutual, and, in that State, under the decisions there, it is probable that set-off would be allowed in such a case as this. But we do not regard the rule adopted in Pennsylvania as in accord with the general rules of equity which govern cases of set-off. We think the general rule is stated by Justice Story, in his treatise on Equity Jurisprudence, where he says: 'Courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, or conversely, of a separate debt against a joint debt; or, to state the proposition more generally, they will not allow a set-off of debts accruing in different rights.'"

In Pennsylvania, a bank cannot set off a deposit against an unmatured note. Kurtz et al. v. County National Bank of Clearfield, 288 Pa. 472, 136 A. 789, 51 A. L. R. 1475. Such set-offs are allowed in the United States courts. Storing v. First National Bank of Minneapolis, 28 F.(2d) 587, 589 (C. C. A. 8); North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 615, 616, 14 S. Ct. 710, 38 L. Ed. 565; Schuler v. Israel, 120 U. S. 506, 510, 7 S. Ct. 648, 30 L. Ed. 707; Harter Bank v. Inglis, 6 F.(2d) 841, 843 (C. C. A. 6); Topas v. John Mac-Gregor Grant, Inc., 18 F.(2d) 724, 725, 52 A. L. R. 807 (C. C. A. 2); Maryland Casualty Co. v. Board of Education, 20 F.(2d) 799, 801 (C. C. A. 3).

These rulings impliedly recognize that the United States courts exercise an independent judgment on matters of set-off and do not follow the decisions of the state courts.

If the determination of this question involves an interpretation of the national banking laws, which it seemingly does, then the United States law controls. In McCandless v. Dyar (D. C.) 34 F.(2d) 989, 991, defendant was indebted to a national bank. He set up as a defense thereto a claim in the nature of a set-off for money paid by him as a guarantor of the bank. The court said:

"Has this defendant the right of set-off under the circumstances pleaded in this action, brought by the receiver upon his indebtedness to the bank? * * *

"The right to the allowance of such an offset in the case at bar must be determined in the light of the statutes of the United States controlling suspended national banks in the hands of a receiver appointed by the Comptroller of the Currency, and especially the provisions of the United States statutes prohibiting preferences in the liquidation of national banks."

See 12 U. S. C. §§ 91, 193, 194 (12 USCA §§ 91, 193, 194).

In the United States courts there must be mutuality of right before a set-off can be asserted. In Scammon v. Kimball, 92 U. S. 362, 367, 23 L. Ed. 483, the Supreme Court stated:

"Whether the suit be one at law or in equity, set-off must be understood as that right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered. Adams' Eq. (6th Am. Ed.) 447.

"Courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, or of a separate debt against a joint debt; nor will such courts allow a set-off of debts accruing in different rights, except under very special circumstances, and where the proofs are clear and the equity is very strong. 2 Story's Eq. (6th Ed.) § 1437."

See Gray v. Rollo, 85 U. S. (18 Wall.) 629, 632, 21 L. Ed. 927; Young v. Black, 7

Cranch, 565, 566, 568, 3 L. Ed. 440; Tucker v. Oxley, 5 Cranch, 34, 37, 3 L. Ed. 29; Beauregard v. Case, 91 U. S. 134, 141, 23 L. Ed. 263.

In Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 S. Ct. 339, 49 L. Ed. 571, a bankrupt was indebted to the timber company. The timber company was indebted to the bankrupt as trustee. It was held the timber company could not set off the trustee debt against the individual debt.

In United States v. Butterworth-Judson Corp'n et al., 267 U. S. 387, 395, 45 S. Ct. 338, 340, 69 L. Ed. 672, it is stated: "A bank having notice that a deposit is held by one for the use of or as security for another has only such right of set-off as is not inconsistent with the rights of the latter."

The foregoing cases in principle rule that defendant cannot set off its deposit in the Bank of Pittsburgh, N. A., as trustee against the deposit of the Bank of Pittsburgh, N. A., with defendant in its own right.

The principle laid down in the foregoing cases is the law of Pennsylvania. On June 27, 1932, the Supreme Court of Pennsylvania, in William D. Gordon v. Union Trust Company, 308 Pa. 493, 162 A. 293, 294, a case identical in principle and almost parallel in facts, speaking by Mr. Justice Kephart, said:

"The Commercial Trust Company deposited $6,429.50 with the Union Trust Company, the account being styled 'Commercial Trust Company Trust Funds.' The Union Trust Company had $6,808.45 on deposit with the Commercial Trust Company, this account being styled 'Union Trust Company Trust Funds.' It is conceded that both deposits represented trust funds of the respective institutions, and, as such, were the property of various cestuis que trust or beneficiaries of each bank.

"Union Trust Company was, and still is, a solvent going concern. Commercial passed into the hands of the secretary of banking because of impairment of capital. The secretary drew on Union for the trust funds of Commercial which it held. Payment of his draft was refused since Union claimed a set-off against it because of the trust fund deposit it had in Commercial. The court below refused to permit the set-off for the reason that it did not appear that there was mutuality of demand both as regards the quality of the right and the identity of the parties.

"The statutes and orders of the banking department have resulted in a general practice among trust companies of depositing trust funds exactly as was done in this case. The beneficial owners of Commercial's trust account are A, B, and C; their money is in the Union bank. The beneficial owners of Union's trust account are X, Y, and Z, and their money is in the Commercial Bank. Strike the trust companies out of the picture, as they are only trustees holding legal title, and the matter is reduced to its simplest form. What is then asked in the set-off is that the money of A, B, and C, be used in part to pay the debts to X, Y, and Z. This we held in Hunter v. Henning, 259 Pa. 347, 103 A. 61, could not be done. Appellant attempts to limit that decision to its facts inasmuch as the trust accounts were there plainly earmarked, but as we said in Trestrail v. Johnson, 298 Pa. 388, 148 A. 493, 494: 'Generally speaking, in all cases where the ownership of the fund itself has been in dispute, and not the right to administer it, the court has been particular to do nothing which would disturb in the slightest the fund reaching its destined lawful end, without unnecessary risks that might come if a more liberal policy was adopted; it being conceded the fund was a trust or one that can be called such.'

"The question here then is one of ownership, not one of determining the status of a deposit between the bank and the depositor. The underlying equitable principle set forth in Trestrail v. Johnson, supra, controls. The names in which suit could be brought and defended furnish an indication, but are not the only criterion, of the right of set-off. To whom do the funds really belong? Mutuality of right in a set-off is not circumscribed by the 'right to bring an action,' but the broader question may be, and generally is, of importance. Whose money or claim is proposed to be used as a set-off? This is the true equitable principle which governs such questions. * * *

"The court below did not err in entering judgment for the secretary of banking for the amount which the Commercial Trust Company had on deposit with the Union Trust Company."

If the deposit of the Potter Title & Trust Company in the Bank of Pittsburgh, N. A., had been of its own money, it would have been entitled, under the law, to set off the same against the deposit of the Bank of Pittsburgh, N. A., of its money in the Potter Title & Trust Company, although the result might be that the Potter Title & Trust Company would receive its entire deposit while other depositors of the Bank of Pittsburgh,

N. A., might receive only a portion of their deposits. But the deposit of the Potter Title & Trust Company in the Bank of Pittsburgh, N. A., was not of its own money, but it was of the money of other persons in which it had no interest other than as trustee or agent. Why should the deposit of such persons be paid in full when such payment may work a preference as against other depositors and creditors of the Bank of Pittsburgh, N. A.? Such a result would be unjust, and is contrary to the decisions of the United States and Pennsylvania courts.

It is directed that judgment be entered in favor of the plaintiff and against the defendant in the sum of $46,897.39, with interest thereon from September 21, 1931, to which ruling an exception is granted to defendant.