## UNITED STATES FIDELITY & GUARANTY COMPANY *v.* WOOLDRIDGE, RECEIVER OF THE NATIONAL BANK OF CLEBURNE.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 352. Argued April 29, 1925.—Decided May 11, 1925.

1. Where a guaranty company executed a bond guaranteeing the fidelity of the president of a national bank, and another to a depositor of the bank insuring payment of deposits, and the bank thereafter became insolvent through the frauds of the president and the guarantor paid the depositor and took an assignment of the depositor's claim against the bank with approval of the bank's receiver, *held* that this claim could not be set-off by the guarantor as assignee or subrogee in an action by the receiver upon the bond first mentioned. P. 237.

2. The doctrine of relation is a legal fiction invented to promote justice and never allowed to defeat the collateral rights of third persons. *Id.*

295 Fed. 847, affirmed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment of the District Court in favor of the receiver of a national bank in an action against the surety of one of its officers.

*Mr. Walter F. Seay* and *Mr. Jos. A. McCullough,* for the plaintiff in error.

Upon failure of a bank a depositer may off-set any claim the bank may have against the depositor to the extent of the deposit. The Receiver takes the assets of an insolvent bank as a mere trustee and creditor, subject to all claims and defenses that might have been interposed as against the insolvent corporation. *Scott v. Armstrong,* 146 U. S. 499.

A surety on paying the debt of its principal is entitled to be subrogated to the rights of the creditors in all

or any of the securities, means or remedies which the creditor has for enforcing payment against the principal.

The right of a surety to subrogation begins with the contract of suretyship and relates back to that time, and is not simply inchoate until it pays the debt. *Prairie State National Bank* v. *United States,* 164 U. S. 227; *Henningson* v. *U. S. F. & G. Co.* 208 U. S. 403; *Hardaway* v. *National Surety Co.* 211 U. S. 550; *Fidelity & Deposit Co. of Maryland* v. *Duke,* 203 Fed. 661; *Cox* v. *New England Ins. Co.* 247 Fed. 955; *Wasco County* v. *New England Eq. Life Ins. Co. et al.* 172 Pac. 126.

The closing of the bank, the inability of the bank to pay its depositors, the necessity of plaintiff in error's paying the railway company and its liability to the bank because of the defalcation, in reality all grew out of the same transaction, or act, to wit: the embezzlement.

Courts of equity frequently deviate from the strict rule of mutuality when the justice of the particular case requires it; and the ordinary rule is that where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other. *Scott* v. *Armstrong, supra; North Chicago Rolling Mill* v. *St. Louis Ore & Steel Co.,* 152 U. S. 594. *Fidelity & Deposit Co.* v. *Duke,* 203 Fed. 661; *National Bank of the Commonwealth* v. *Mechanics' National Bank,* 94 U. S. 437.

A set-off otherwise valid cannot be considered a preference, as it is only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent. The right of subrogation relates back to the time of the contract of suretyship, and not merely from the time that the debt is paid by the surety or actual liability upon the surety is invoked. This being correct, then this plaintiff in error's right to set-off preceded the failure of the bank and of necessity could not be a preference. *Scott* v. *Armstrong, supra.* The

rules of law and equity as to the rights of a surety to subrogation and set-off are not altered merely because the surety was a compensated one.

From the inception of the suretyship relation there is an implied legal obligation on the part of the principal to indemnify and reimburse his surety. This implied promise of indemnity is as effectual as if embodied in a written indemnity agreement executed by the principal at the date of its application for the bond; *Williams* v. *U. S. Fidelity & Guaranty Co.*, 236 U. S. 557; and constitutes the surety a creditor of the principal from the time of the execution of the bond. To regard the claim of the surety against the principal as arising merely through assignment after insolvency of the principal and payment to the obligee is to ignore the debtor-creditor relationship existing *ab initio* between a surety and its principal. *Rice* v. *Southgate*, 16 Gray, 143; *Barney* v. *Grover*, 28 Vermont, 393; *Beaver* v. *Beaver*, 23 Pa. St. 167; *Walker* v. *Dicks*, 80 N. C. 263; *M. Kalin* v. *Bro. V. Bledsoe*, 98 Pac. 921; *Craighead* v. *Swartz*, 67 Atl. 1003; *Allen* v. *Van Campen*, 1 Freem. Ch. 273; *Labbe* v. *Bernard*, 82 N. E. 688; *Dudley Lumber Co.* v. *Nolan Bros.* 156 S. W. 465.

*Mr. Ellis Douthit*, with whom *Mr. J. H. Barwise, Jr.,* was on the brief, for defendant in error.

*Mr. Loren Grinstead* and *Mr. Frank T. Wyman* filed a brief as *amici curiae* by special leave of Court.

Mr. Justice Holmes delivered the opinion of the Court.

The National Bank of Cleburne, Texas, became insolvent through the frauds of its president and closed its doors on October 17, 1921. On November 1 following the defendant in error was appointed receiver, and on April

14, 1922, began this suit upon a bond executed by the plaintiff in error on August 28, 1921, binding it to indemnify the Bank for losses of this character to the extent of $25,000. The Guaranty Company pleaded in set-off that on August 24, 1921, it became surety for the Bank upon another bond to the Gulf, Colorado and Santa Fe Railway Company, conditioned upon payment by the Bank to the Railway Company of the Company's deposits in the Bank, and that on January 16, 1922, it paid to the Railway Company $23,312.51 and as matter of law became subrogated to the rights of the Company against the Bank, and in addition took an assignment of such rights, which was approved by the plaintiff on February 1. An agreement of the parties was filed, that the facts alleged were true and that the only question for the Court was " whether or not under the facts alleged, the defendant is entitled as against the plaintiff to set off the demand it holds as assignee or subrogee of the Gulf, Colorado & Santa Fe Railway Company." Thus the answer and the agreement confine the issue before us to the rights of the defendant Guaranty Company by way of subrogation or assignment. The District Court and the Circuit Court of Appeals gave judgment for the plaintiff for $25,000 interest and costs and denied the defendant's right. 295 Fed. 847.

The two bonds were wholly independent transactions and were not brought into mutual account by an agreement of the parties. The Guaranty Company after the insolvency of the Bank could not have bought a claim against the Bank and used it in setoff. *Scott* v. *Armstrong*, 146 U. S. 499, 511. *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 290. *Yardley* v. *Philler*, 167 U. S. 344, 360. The Receiver contends that that is the position of the defendant here, because it was only a guarantor and was only liable upon the default of the President of the Bank that produced the insolvency. The Court

below treated the claim of the Railway Company against the Bank as acquired by the defendant after the insolvency. The defendant, however, contends that upon its payment to the Railway Company its subrogation related back to the date of its contract; and we will assume for purposes of argument that this is true. But suppose it is, the right of the Railway Company was simply that of a depositor, a right to share with other unsecured creditors in the assets of the Bank, of which the bond now in suit was a part. There would be no equity in allowing the Railway Company a special claim against this bond. We will assume that if the Railway Company had insured the honesty of the Bank's officers the Bank might have offset the obligation of the company against its claim as a depositor. But it is impossible to treat the succession of the defendant to the Railway Company's claim as effecting such an absolute identification with the Railway Company that one and the same person insured the Bank and made the deposits. The doctrine of relation "is a legal fiction invented to promote the ends of justice. . . . It is never allowed to defeat the collateral rights of third persons, lawfully acquired." *Johnston* v. *Jones*, 1 Black, 209, 221.

*Judgment affirmed.*