**JEWETT v. MARTINSVILLE MILLING CO.**

No. 5320.

Circuit Court of Appeals, Seventh Circuit.
March 21, 1935.

Rehearing Denied April 17, 1935.

George M. Barnard and Raymond L. Walker, both of Indianapolis, Ind., and Ralph K. Lowder, of Martinsville, Ind., for appellant.

Homer Elliott, of Indianapolis, Ind., and J. C. McNutt, of Martinsville, Ind., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The suit was brought by appellee, the milling company, to effect set-off of alleged mutual debts between the parties, the debts being (a) a deposit by appellee in the bank now in receivership, and (b) a promissory note for an amount less than this deposit, executed by appellee's president alone, but alleged in the complaint to represent a debt of the milling company to the bank.

The generally applicable law governing the right of set-off is not in dispute. Concededly there must be mutuality of obligation, i. e., the debts must be owing between the same persons and in the same right. United States Fidelity Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483; Gray v. Rollo, 18 Wall. (85 U. S.) 629, 21 L. Ed. 927. Whether there was such mutuality of indebtedness between the milling company and the bank depends, of course, upon the particular facts.

The First National Bank of Martinsville was a national bank which closed its doors June 27, 1932. The milling company, a long-time customer of the bank, then had on deposit $5,977.85. Clifton F. Schnaiter, who then was and long theretofore had been the milling company's president and the owner of practically all of its capital stock, had signed, as maker, a note to the bank, upon which, at the time of the bank's closing, there was due $4,000, the note having been reduced by payments to that amount from the original loan of $5,000.

In 1928 the milling company held a mortgage upon a large farm owned by the S. Major estate, to secure an indebtedness to the company of $2,457.09. The farm was subject to a prior mortgage of $25,000 which was due, and its foreclosure was threatened. Schnaiter asked the bank to loan his company $25,000 to pay off that mortgage, it having been arranged that title to the farm would then be conveyed. The bank's officers, upon consideration of the matter, informed Schnaiter that the bank would make no loan to his company, but that if he, Schnaiter, would take title to the farm the bank would let him have $20,000 on his own notes, secured by a mortgage on the farm, and that on his own unsecured note would let him have $5,000. Schnaiter accepted the proposition, took title to the farm (which he still holds), gave the bank his individual notes secured by his mortgage on the farm

for $20,000, and his unsecured note for $5,000, the entire proceeds of the loans going toward paying off the first mortgage, which was released. How the milling company's second mortgage was treated or disposed of in order to place the bank's mortgage first, the evidence does not disclose.

Schnaiter testified: "They (the bank's officers) said that they would not take the Milling Company for this. I signed the note in my own name. I didn't sign it by the Milling Company or as an officer of the Milling Company, and the Milling Company's name does not appear on the note, either as maker or endorser. It was my debt."

The bank's cashier testified: "We never looked to the Milling Company for the payment of the Five Thousand Dollar note. We looked to Mr. Schnaiter alone."

In this respect there is no dispute in the evidence.

If, when the note was given, Schnaiter and his company had, as between themselves, any agreement or understanding that the company would be primarily or ultimately liable for its payment, it does not appear that the bank had any knowledge of it. Neither the bank nor its receiver could be affected by any such secret understanding, if there was one.

It appears that interest, taxes, and other outlays respecting the farm were paid by the milling company's checks on the bank; but Schnaiter testified that he did about all his personal business through the milling company, paying through it all his taxes and the interest on his own notes, including the one in question and the mortgage notes given by Schnaiter, and that the milling company received the income from the farm, but that it kept suitable account of all such transactions.

It appears from a statement of Schnaiter to the bank that he was then worth about $137,000, and that his personal deposit in the bank at the time it closed was about $102, which the receiver automatically set off against the $4,000 due to the bank on the note, although it does not appear that Schnaiter asked this to be done.

Upon this state of facts the District Court found and decreed that the equities were with the milling company, and that the $4,000 note should be set off against its deposit in the bank at the time of failure. No finding was made that the $4,000 due on Schnaiter's note represented an indebtedness from the milling company to the bank,

unless such finding must be inferred from the decree awarding the set-off; nor was it found that the note was an accommodation note as alleged, whereof appellee was the actual debtor.

The bank had no interest whatever in the Major farm transaction. Nothing appears to have been owed the bank, directly or indirectly, by the Major estate. It had no interest in supplying the funds for paying the first mortgage save only the interest of a prospective lender of money. It had the right to select its own debtor. However willing and ready the milling company might have been to borrow the money and give its obligations therefor, the bank, for reasons of its own, would not lend it any. It was willing to lend the money to Schnaiter personally if he would take title to the farm and execute his notes to the bank. This Schnaiter agreed to do and did, and the relation of debtor and creditor between the bank and Schnaiter was created and continued unquestioned until after the bank failed. The milling company, through Schnaiter its president, had full knowledge that the bank would not loan to it, and that the note transaction was wholly between the bank and Schnaiter, the individual.

In the entire transaction between the bank and Schnaiter there was no suggestion of a debtor and creditor relation, direct or indirect, between the bank and the milling company, with Schnaiter a surety for the company, or of Schnaiter being an accommodation maker of the note; and such relation cannot now be imported into the case for the purpose of relieving Schnaiter from the wholly personal obligation he assumed in giving his note to the bank.

Appellee's brief (page 9) very properly disclaims any contention that the legal status of the parties is affected by the fact that Schnaiter was the owner of practically all the capital stock of the milling company, and any contention that Schnaiter acted as appellee's agent in the transaction. If Schnaiter chose to have the advantages and immunities of a corporate organization for conducting the business of the milling company, he cannot complain if the milling company is treated, as it must be, as a separate and independent entity.

Appellee's counsel refer us, with apparent confidence, to the recent case of Shannon v. Sutherland et al., 74 F.(2d) 530 (C. C. A. 4). The set-off there directed was in favor of an indorser on a note which was held by a suspended bank wherein the in-

dorser was a depositor, for a portion of which note the same indorser was by contract and to the knowledge of the bank liable as a principal. The essential facts are wholly unlike those here—where not only was the milling company not contractually liable to the bank in any degree as principal, surety, or otherwise, but the bank, to the certain knowledge of the milling company, had expressly declined to accept it in any capacity upon the note. We can see no applicability here of the cited case.

Set-off is at times allowed where to deny it would entail inequity and hardship which its allowance would avert. But no such situation is here presented. The only inequity which might here suggest itself would be toward the other depositors of this broken bank in case its distributable assets were reduced by applying the milling company's deposit account in discharge of the presumably collectible Schnaiter note.

This record does not in our judgment disclose any of those elements which would justify the set-off.

The decree is reversed, with direction to dismiss the complaint for want of equity.