AMERICAN BONDING CO. v. ANDERSON et al. (two cases).

ANDERSON et al. v. AMERICAN BONDING CO. et al.

COMMISSIONERS OF SINKING FUND OF LOUISVILLE, KY., v. ANDERSON et al.

Nos. 7968, 7984, 7969, 7970.

Circuit Court of Appeals, Sixth Circuit.

April 12, 1940.

Leo T. Wolford, of Louisville, Ky. (Wm. Marshall Bullitt, Leo T. Wolford, Eugene B. Cochran, and Bruce & Bullitt, all of

Louisville, Ky., on the brief), for American Bonding Co.

Lawrence S. Poston, of Louisville, Ky., for Commissioners of the Sinking Fund.

Robert S. Marx, of Cincinnati, Ohio (Frank E. Wood, Robert S. Marx, Harry Kasfir, and Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for A. M. Anderson, receiver.

. Davis, Boehl, Viser & Marcus, of Louisville, Ky., for Hartford Accident & Indemnity Co. et al.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

These appeals arise from controversies as to the indebtedness of the National Bank of Kentucky to the Commissioners of the Sinking Fund of the City of Louisville, a corporation created and existing by virtue of §§ 3010-1 to 3024 of the Kentucky statutes.

On November 17, 1930, the Bank closed its doors, and a receiver appointed by the Comptroller of the Currency took charge. The Commissioners of the Sinking Fund then had on deposit $858,952.48, distributed among eleven separate accounts, all designated as accounts of the Commissioners.

At that time several issues of the City's bonds were outstanding. Each issue had been made a charge upon the sinking fund and a tax levied to retire it at maturity. As such taxes were collected, they were deposited in a "General Fund Account." At the end of each year, after payment of expenses, the Commissioners distributed the balance in this account to the several sinking fund accounts. It was provided by statute that: "The sinking fund shall be under the control and management of the commissioners of the sinking fund, and shall be held and sacredly used for the payment of the principal and interest of the bonded debt of the city * * * and the whole resources of said fund from year to year shall be sacredly set apart and applied to the payment of the interest and principal of the city's debts chargeable on said fund, and to no other use or purpose until the whole of the debts of said city are fully paid and satisfied, including the present and any future indebtedness of said city." Carroll's Kentucky Statutes, § 3010-8.

The Commissioners were without power to "call" any of the City's bonds, but it was provided that: "The said commissioners shall apply said fund to the payment of the city's debts chargeable on the same, when they can do so on fair terms; but whenever there shall be a surplus of said fund, which cannot be applied on fair terms to the extinguishment of said liabilities, the said commissioners may invest the same in bonds of said city, or for which it is bound * * *." Carroll's Kentucky Statutes, § 3010-9.

Pursuant to statute,* when the Commissioners selected the Bank as depository, they required it to provide a bond to secure payment of deposits, which were first made in February, 1924. On November 22, 1928, the Bank furnished the Commissioners a bond in the principal sum of $75,000, with the Hartford Accident and Indemnity Company and the Union Indemnity Company as sureties, conditioned as follows: "Now, therefore, the Condition of this obligation is such that if the said principal shall safely keep and promptly pay on proper check or order all money deposited with it by the Commissioners of the Sinking Fund of the City of Louisville, Kentucky, during the year commencing December 1, 1928, and ending December 1, 1929, including all moneys and interest thereon now on deposit to the credit of the said Commissioners, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

Effective December 1, 1929, and July 12, 1930, the Bank furnished the Commissioners one-year bonds, similarly conditioned, in the principal sums of $75,000 and $25,000, respectively, signed by the American Bonding Company as surety.

When the Bank closed, owing the Commissioners $858,952.48, it held in its investment portfolio bonds of the City of Louisville, aggregating in face value $169,200,

---

* The pertinent provision is as follows: "The commissioners of the sinking fund shall deposit the funds in their hands as commissioners in some incorporated bank, state or national, located or doing business in said city. The bank selected by the commissioners aforesaid shall give bond with good and sufficient security to secure the said commissioners the payment of all moneys and other things of value deposited by them with such bank." Carroll's Kentucky Statutes, § 3010-12.

and then selling above par. But practically all of these bonds were then pledged to the United States to secure payment of postal savings funds.

On March 11, 1931, the Bonding Company paid the Commissioners $101,500, the principal amount of its two bonds, with accrued interest, and filed its claim with the Receiver for $100,000 as a general creditor of the Bank. A 67% dividend' was declared on general claims in February, 1931, but the Bonding Company's claim was denied. The Bonding Company had demanded, without avail, that the Commissioners assign to it $100,000 of their claim against the Receiver. It then demanded that the Hartford and Union Indemnity Companies make contribution, contending that they were co-sureties to the extent of the amount due the Commissioners on December 1, 1929. This demand was also refused.

The Commissioners sued the Receiver and claimed an "off-set" in the Bank's indebtedness to the extent of the face value of the City's bonds owned by the Bank when it closed, praying that the Receiver be ordered to deliver to them "$169,200.00 City of Louisville bonds with interest coupons attached as of the date of said off-set and if said interest coupons have been cashed, to deliver to this plaintiff the full amount of same in cash." They also claimed a preference to the extent of the balance due them after allowance or denial of their claim of "off-set." The Receiver filed an answer, contesting these claims, and a cross petition praying that the Bonding Company be required to set up its claims to dividends. The Bonding Company duly filed a cross petition setting forth its claims, although it had previously brought an independent suit asserting identical rights and joining therein the indemnity companies from which it claimed contribution.

The District Court dismissed both the cross petition and the separate petition of the Bonding Company, and appeals from these orders are causes No. 7968 and No. 7984, respectively. The Court also denied the claim of the Commissioners to a preference, and the appeal from that decision is cause No. 7970. The Receiver's appeal from the allowance of the "off-set" is cause No. 7969.

We consider first whether the Commissioners were entitled to have the City's unmatured bonds "off-set" against the Bank's indebtedness.

The Commissioners, as noted above, prayed surrender to them of these bonds as of the date of the Bank's failure, in return for a $169,200 reduction of the Bank's $758,952.48 indebtedness. These bonds have been sold by the Receiver, and the proceeds, $173,512.25, pursuant to stipulation, are held pending decision as to whether the Commissioners were entitled to delivery of the bonds as prayed. The District Court so held and ordered the Receiver to pay the Commissioners $196,413.20 "out of the funds which have come to his hands as receiver by virtue of collection of interest on the bonds and the proceeds of the sale thereof." Upon payment, the Receiver was authorized to deduct $169,200 from four specified sinking fund accounts.

■ We are of the opinion that the decree is erroneous. In the case of Springfield Nat. Bank, et al. v. American Surety Co., 6 Cir., 7 F.2d 44, 45, a surety company had executed a bond to secure payment to the State of Ohio of a $50,000 deposit in the Springfield National Bank. It had also executed a $50,000 bond to the bank to secure its cashier's faithful performance of his duties. Through frauds of the cashier, the bank became insolvent. The surety paid the State the amount of its deposit, and, as assignee of the State, was later reimbursed to the extent of $21,000. When sued on its fidelity bond, the surety sought to set-off against the bank's claim the difference between the amount it had been paid by the receiver and the amount it had paid the State. Relying upon United States Fidelity & Guaranty Co. v. Wooldridge, Receiver, 268 U.S. 234, 45 S.Ct. 489, 69 L.Ed. 932, 40 A.L.R. 1094, this Court held that the District Court erred in allowing the set-off. Judge Moorman said:

"The two bonds were separate transactions, totally lacking in contact. When other equities are involved the right of set-off ordinarily depends on mutual credits which have been defined as 'an existing debt due to one party, and a credit by the other party, founded on, and trusting to such debt, as a means of discharging it.' Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059. Courts of equity have held that the requisite mutuality exists where the transactions are such as to raise a presumption of reciprocal credits or an agreement for a set-off. Carr v. Hamilton, 129 U.S. 252, 9 S.Ct. 295, 32 L.Ed. 669.

"But the presumption cannot be indulged here. Each bond was independent of the

other and executed for the usual consideration for a single bond of that kind. The only color of connection between the two demands arises from the fortuitous circumstance that the dishonesty of the cashier caused the bank's insolvency. It could not be supposed that when the bank agreed to indemnify the surety on the deposit bond it relied on the latter's liability on the cashier's bond (not then in existence) in the event of his defalcation, or that the surety company, in accepting the bank's obligation, trusted as a means of discharging it to a liability that it thereafter assumed for a wholly separate consideration. Nor is it to be presumed that in executing the bond of the cashier for the usual consideration the surety company relied on the obligation of the bank to indemnify it against loss on the deposit bond. The bank was legally bound to repay on demand the deposit made by the state. The surety obligated itself to pay if the bank should default. To permit the performance of that obligation to defeat a separate surety obligation would eventuate in an unfair distribution of the bank's assets among its creditors."

We are of the opinion that the allowance of the "off-set" here claimed would, to use the words of Judge Moorman, result in "an unfair distribution of the bank's assets among its creditors." The bonds in question were purchased in 1919 and were a part of the Bank's general assets. The Commissioners do not claim they knew the Bank owned the bonds when they selected it as depository. Hence, there is no basis for the inference that they relied upon the bonds to discharge the Bank's obligation. Cf. Cleveland Nat. Bank v. Kent, 6 Cir., 100 F.2d 54.

It has been noted that these bonds were unmatured at the date of insolvency, and this fact has been held by some courts to prevent their use by way of set-off. Armstrong, Receiver v. Helm, 13 Ky.Law Rep. 460, and Annotations in 25 A.L.R. 938, 82 A.L.R. 665, and 97 A.L.R. 588.

Practically all of the bonds in question were pledged to the United States on the date on which the District Court adjudged that the Commissioners were entitled to their surrender. Had they not been redeemed, the Commissioners would never have contended that they were entitled to them. The Receiver has reacquired them with money that was a part of the Bank's general assets, and we think

they should, in consequence, bear the character of general assets. Moreover, we think, as did the Receiver, that any claim the Commissioners may have as to these bonds must have existed when the Bank failed; they can acquire no right as a result of the Receiver's decision to redeem the bonds instead of allowing the government to sell them to satisfy the Bank's debt. Dakin v. Bayly, 290 U.S. 143, 54 S. Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999. See 7 Am.Jur. § 474.

We are of the opinion not only that the Commissioners have no right to a set-off, but that they have not, in reality, asserted such a right. What they have sought is a forced sale to them of the City's unmatured bonds, selling above par, at their face value, the consideration therefor being cancellation of an equal amount of the insolvent Bank's indebtedness. The right of set-off involves only a cancellation of mutual indebtedness. Cf. Scammon v. Kimball, 92 U.S. 362, 23 L.Ed. 483.

We now consider whether the Commissioners are entitled to rank as preferred creditors as to any part of the $758,952.48 unpaid by the Bonding Company.

In support of this claim, it is argued that a bond equal to the amount of deposits was required by the provision in § 3010-12 that the bank selected as the sinking fund depository shall give "good and sufficient security to secure the said commissioners the payment of all moneys and other things of value deposited by them with such bank"; and that the Bank became trustee ex maleficio as to deposits in excess of the amount of the bonds.

The District Court correctly took the position that it was bound by the construction placed upon this statute by the Court of Appeals of Kentucky, in Louisville Trust Company v. Commissioners of the Sinking Fund, 260 Ky. 219, 84 S.W.2d 30, and it is conceded that this decision, if recognized here, adversely disposes of the Commissioners' claim to a preference. We think the Kentucky Court's construction of the statute is correct, but, if we did not, we would be bound to follow it, inasmuch as there is no suggestion that it obstructs or impairs any federal right. In no event would we lend ear to the suggestion that the suit was sub rosa friendly and, in consequence, the decision not well considered.

The Bonding Company assails the District Court's decision that it was not en-

titled to receive dividends upon the $100,000 paid the Commissioners. It concedes that it is not entitled to be subrogated to the Commissioner's claim until the entire indebtedness for which it was surety has been paid, but contends that it has discharged that indebtedness, inasmuch as its bond secured only $100,000. The bond, however, was conditioned to be void "if the said principal shall safely keep and promptly pay upon proper check or order all moneys deposited with it by the Commissioners * * * during the year * *' * and including all money and interest thereon now on deposit to the credit of said Commissioners." The District Court was of the opinion that the bond in express terms secured all money deposited with the Bank, and we think this construction is correct. It follows from principles too well settled to require citation of authority, that the Bonding Company has no right to share in its principal's assets until its principal's debt is fully paid.

The District Court's denial of the Bonding Company's claim to contribution from the indemnity companies was clearly required. The Commissioners do not claim that the indemnity companies are still liable; but if they are, as contended by the Bonding Company, it is not entitled to contribution. Only when the principal's debt is completely satisfied and the Bonding Company has paid more than its proportionate share can it demand contribution from co-sureties.

The orders of the District Court in causes Nos. 7968, 7970 and 7984 are affirmed.

The order in cause No. 7969 is reversed and remanded for further proceedings in accordance with the views expressed in this opinion.