In re FLOTATION SYSTEMS, Inc.

No. 43745.

District Court, S. D. California, Central Division.

May 2, 1946.

Martin Gendel, of Los Angeles, Cal., for trustee.

Charles E. R. Fulcher and Carol G. Wynn, both of Los Angeles, Cal., for respondent National Auto & Casualty Ins. Co.

YANKWICH, District Judge.

On December 14, 1943, the Defense Plants Corporation, an agency of the United States, and Flotation Systems, Inc., the contractor and bankrupt, entered into a contract for the construction of a sewage disposal plant at the Ryan School of Aeronautics at Hemet, California. The contract required the contractor to furnish a bond in the penal sum of $23,819.97, under the Act of the Congress, known as the Miller Act.[1]

The bond was actually executed with the National Automobile & Casualty Insurance Company, one of the respondents, as surety. The contractor was adjudicated a bankrupt, upon a voluntary petition, on February 16, 1945. A trustee was appointed on March 12, 1945. Prior to the adjudication, the contractor had completed the work. However, there remained, at the time, unpaid by him the sum of $7222, due to various parties who had furnished labor and materials for carrying on the work. After the adjudication, the Defense Plants Corporation turned that sum of moneys over to the trustee in bankruptcy.

On December 12, 1945, on the petition of the trustee, the Referee issued an Order to Show Cause directed to the parties who furnished labor and material, and also to the National Automobile & Casualty Insurance Company, as respondents, to show cause why an order should not be made declaring that their claims were unsecured claims, and that no part of the funds in the possession of the trustee were ear-marked funds. After hearing, the Referee, on February 5, 1946, made an order determining that the sum received by the trustee was subject to liens of the unpaid claimants who furnished labor or material, or both, to carry out the contract. The trustee was ordered to pay the claims

[1] 40 U.S.C.A. §§ 270a to 270d.

in full out of the funds so received by him.

This is the petition of the trustee to review the Order.

The sole question decided by the Referee, which is before me for review, is whether the money paid over to the trustee could be subjected to a lien of the parties named in the Order.

The case was briefed before the Referee, who wrote an extended opinion. Additional briefs have been filed in this court,—the final ones at my request. A study of them all leads me to the conclusion that the Referee was wrong in giving to the unpaid material men a lien upon these funds.

Since the institution of this review, two of the claimants have also instituted actions, in one of which a judgment has been rendered against the surety company. It is conceded by all that the material men *have no lien* on governmental property on which work is done. No question of lien under state laws could arise, as we are dealing with public construction by agencies of the United States. Besides, courts in bankruptcy will not enforce preferences of material men under state lien laws.[2] The Referee, readily conceding that the material men are not entitled to a lien under either state or federal law, did, however, recognize such a lien by reference to general equitable principles.

The cases cited in support of his position are readily distinguishable. They can be grouped into several categories. In one group may be put the cases in which the Courts have held generally,—mostly in independent suits,—that the surety has a superior right to that of a bank or other lender of money[3]. Only one of these cases arose in bankruptcy.[4] All these cases, giving effect to the provisions of Section 203, Title 31 U.S.C.A., have also held the assignments void, when the United States, or one of its agencies, is a party to the contract.[5] The Amendment of 1940 to Section 203, Title 31 U.S.C.A., known as the "Assignment of Claims Act", is not involved here.[6]

In the first group of cases just cited[7], and others arising in bankruptcy or receiverships, the surety either paid out money to complete the work, or actually paid the claims of subcontractors and material men, and asserted the right to retained funds upon the doctrine of subrogation[8]. Another series of cases merely gives effect to liens recognized by state law.[9]

None of these cases turned on the question involved here,—whether subcontractors and material men are entitled to an equitable lien. Whatever the Courts may have said, arguendo, upon the question,

[2] San Mateo Feed & Fuel Co. v. Hayward, 9 Cir., 1946, 149 F.2d 875; Indemnity Insurance Co. of North America v. Reisley, 2 Cir., 1945, 153 F.2d 296.

[3] Prairie State Bank v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L. Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 1908, 208 U. S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Martin v. National Surety Co., 1937, 300 U. S. 588, 57 S.Ct. 531, 81 L.Ed. 822; London & Lancashire Indemnity Co. of America v. Endres, 8 Cir., 1923, 290 F. 98; California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 1943, 129 F.2d 751.

[4] London & Lancashire Indemnity Co. v. Endres, 8 Cir., 1923, 290 F. 98.

[5] Bank of California v. Commissioner, 9 Cir., 1943, 133 F.2d 428, 432; Rosecrans et al. v. Wm. S. Lozier, Inc., 8 Cir., 1944, 142 F.2d 118, 124.

[6] Coconut Grove Exchange v. New Amsterdam Casualty Co., 5 Cir., 1945, 149 F.2d 73.

[7] See Note 3.

[8] In re Scofield Co., 2 Cir., 1914, 215 F. 45; In re McGarry & Son, 7 Cir., 1917, 240 F. 400; Cox v. New England Equitable Ins. Co., 8 Cir., 1917, 247 F. 955; American Surety Co. v. Finletter, 3 Cir., 1921, 274 F. 152; Street v. Pacific Indemnity Co., 9 Cir., 1935, 79 F.2d 68 (arising under State law).

[9] United States Fidelity & Guaranty Co. v. Sweeney, 8 Cir., 1935, 80 F.2d 235; Cutler-Hammer, Inc., v. Wayne, 5 Cir., 1939, 101 F.2d 823; In re L. H. Duncan & Sons, 3 Cir., 1942, 127 F.2d 640; see contra, San Mateo Feed & Fuel Co. v. Hayward, 9 Cir., 1945, 149 F.2d 875; Indemnity Insurance Co. v. Reisley, 2 Cir., 1946, 153 F.2d 296; Street v. Pacific Indemnity Co., 9 Cir., 1935, 79 F.2d 68. But compare In re Van Wagner Construction Co., 6 Cir., 1936, 83 F.2d 27.

was obiter, because what they were deciding was the subrogation rights of the surety when they either settled with the subcontractors and material men, or expended money in finishing the work left uncompleted by the contractor.

■ The only case in which the question was actually involved, and seems to have been decided in accordance with the views of the Referee here, is Belknap Hardware & Manufacturing Co. v. Ohio River Contract Co.[10] That arose in a receivership, and was an independent suit in equity upon a contractor's bond. The Court ruled that the suit would not lie, that the material men should resort to intervention in the receivership, or to an independent suit ancillary to it. So doing, the Court based its decision upon the ground that material men do have a lien. I do not choose to follow this case, because I believe it is based,—as is the opinion of the Referee in this case,—upon what I consider a misconception of the meaning and purpose of the Miller Act. As already stated, the authorities they rely on were decided on the theory of subrogation. *But here there can be no subrogation.* The surety, as the Referee found specifically, *has not* filed a claim. It could not do so, because it had not paid out anything on these claims under the bond. Whatever right it may have in the future, should it be compelled to make such payments, cannot be determined in this proceeding. It is true that they were made respondents and that they claim to be carrying the burden, on this review, for the material men. But their interest, at present, at least, is nominal only. They benefit by the order indirectly only. Its reversal will still leave undecided, so far as they are concerned, such rights as they may acquire in the future, upon the theory of subrogation.

■ I feel that the Referee, in reaching the conclusion, assumed, as a fact, loss to the surety and the consequent right to subrogation. I need not decide now what, if any, rights might accrue to the company. That decision can be made if and when the company is compelled to pay under its bond, and seeks to recoup its loss. We cannot, in anticipation of this loss, determine the rights of the surety when that loss should occur.

■ I had occasion quite recently[11] to consider the rights of material men under the Miller Act. They are protected under it by having the contractor's bond with the Government inure to their benefit, provided they give notice to the contractor, and not to the Government, or to the surety. The aim of the notice is merely to enable the contractor to withhold funds in case a material man has not been paid. The Act should be construed liberally. And I so construed it in the case just cited, when considering the sufficiency of notice. However, the Act *does not* create a lien in favor of the material men upon any unpaid funds in the hands of the public body for whom the contractor performs the work. It merely protects them by giving them certain rights under the bond.

[10] 6 Cir., 1921, 271 F. 144. It is to be noted that the Supreme Court in Martin v. National Surety Co., 1937, 300 U.S. 588, 593, 57 S.Ct. 531, 81 L.Ed. 822, while referring to this case as one on which the Circuit Court (Martin v. National Surety Co. 8 Cir., 1936, 85 F. 2d 135) had relied in support of the broad proposition that the proceeds of a building contract are chargeable in favor of material men with an *absolute* equitable lien of which they could not be deprived by the will of the contractor, the Court, after calling attention to cases which hold the contrary (Third National Bank v. Detroit Fidelity & Surety Co., 5 Cir., 1935, 65 F.2d 548; Kane v. First National Bank of El Paso, 5 Cir., 1932, 56 F.2d 534, 85 A.L.R. 362; Fidelity & Deposit Co. v. Union State Bank, D.C.Minn.1927, 21 F.2d 102), chooses to base its affirmance upon the narrow ground that the lien in the particular case arose by virtue of a power of attorney which had been given to one with full instruction to collect the moneys and apply them specifically to the payment of material men. Thus, the Supreme Court, having an opportunity to approve the broad language of both cases, chose not to do so. So the two cases most strongly favoring the position of the Referee do not have the sanction of the Supreme Court.

[11] United States ex rel. Hargis v. Maryland Casualty Co., D.C.Cal.1946, 64 F. Supp. 522.

The bankruptcy of the contractor does not destroy the surety's liability. And the Supreme Court quite recently[12] has held that the right of material men to recover from the bankrupt is unaffected by "what their rights against the surety might have been."[13]

In a still more recent case[14], the Supreme Court said: "In appropriate cases, acting upon equitable principles, it may also subordinate the claim of one creditor to those of others in order to prevent the consummation of a course of conduct by the claimant which, as to them, would be fraudulent or otherwise inequitable. Taylor v. Standard Gas Co., 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669; Pepper v. Litton, supra [308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281]; Prudence Realization Corp. v. Geist, supra [316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293]; American Surety Co. v. Sampsell, No. 142, 66 S.Ct. 571." But here the group of creditors is not given any lien by state or federal law. It has, regardless of bankruptcy, a remedy against a solvent surety. No principle warrants our creating an equitable lien in their favor as against the general creditors *who do not have* the additional protection of the bond.

Nor can the Referee's position be sustained by giving effect to the assignment by the contractor to the surety of funds to become due.[15] Contracts of this type are common. They are a means of protecting the surety. We must leave the assignment out of consideration. For actually it is not before us. And this for the obvious reason that there is no evidence that the assignment was ever carried into effect, or that any funds were actually turned over by the Government or the contractor to the surety for distribution. All that the Referee found was that, in connection with the application for the bond, the bankrupt had made such assignment. The surety, under the assignment, could not have made a claim to the money in the hands of the Government. More, *it did not do so*. All that can be said is that, should the surety be compelled to pay upon its liability on the bond the two claims (Birnie Electric and Fairbanks, Morse & Co.), in the first of which judgment has been obtained, and in the other, in which an action is pending, or any of the others, its rights under this assignment, in subrogation, might be considered. But we cannot, in anticipation of actual loss, create an equitable lien in favor of their prospective creditors, in order to save them the time and trouble of meeting their liability under the bond and then claiming whatever rights they may have in bankruptcy court.[16] After all, the Miller Act seeks to protect from loss material men and not sureties who underwrite such possible loss. And the language of the Supreme Court in the Sampsell case[17], when it refused to place the surety on a parity with material men, indicates that there is no equitable foundation for protecting them against possible loss by creating a lien, not in their favor, but in favor of the creditors of the contractor, who might become theirs also, should they claim under the bond.

The Order is reversed.

---

[12] American Surety Co. v. Sampsell, No. 142, 66 S.Ct. 57.

[13] American Surety Co. v. Sampsell, 66 S.Ct. at page 573.

[14] Heiser v. Woodruff, 66 S.Ct. 853, at page 856.

[15] See cases in Note 5.

[16] United States Fidelity Co. v. Wooldridge, 1925, 268 U.S. 234, 45 S.Ct. 489, 69 L.Ed. 932, 40 A.L.R. 1094; California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 1943, 129 F.2d 751, 755.

[17] See Note 12.