**MIDTOWN BANK OF MIAMI, Appellant,**

v.

**The TRAVELERS INDEMNITY COMPANY, Appellee.**

**The TRAVELERS INDEMNITY COMPANY, Appellant,**

v.

**RIVERSIDE BANK, Appellee.**

No. 22213.

United States Court of Appeals Fifth Circuit.

Sept. 20, 1966.

As Modified on Denial of Rehearing Nov. 25, 1966.

Thomas S. Trantham, Jr., Peter C. Jones, Miami, Fla., for appellant, Mershon, Sawyer, Johnston, Dunwody, Mehrtens & Cole, Miami, Fla., of counsel.

Edward A. Perse, Joseph A. McGowan, Carey, Terry, Dwyer, Austin, Cole & Stephens, Miami, Fla., for appellee, Travelers Indemnity Co.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and FISHER, District Judge.

FISHER, District Judge.

This is an appeal by Midtown Bank of Miami, in Miami, Florida, (Midtown) from a summary judgment in favor of the Travelers Indemnity Company (Travelers), and also an appeal by Travelers Indemnity Company from a summary judgment in favor of Riverside Bank, in Miami, Florida (Riverside). In January, 1963, Midtown, a newly organized banking corporation, entered into a construction contract with W. Larry Humphries (Humphries), a builder, to construct a banking house for Midtown for the sum of $61,135.00. On March 6, 1963, a performance and payment bond was furnished by Travelers.[1]

W. Larry Humphries, Inc., its President, W. Larry Humphries, and its Secretary-Treasurer, Betty S. Humphries, wife of W. Larry Humphries, executed a loan with the Riverside Bank for $12,000.00 as evidenced by notes. As security for the renewal of the loan Humphries gave an assignment of the contract dated June 21, 1963, which assignment provided that the loan should be paid when due on July 15, 1963, from the proceeds of the contract.

Humphries notified Midtown of the assignment[2] and requested Midtown to pay to Riverside the amount of the loan from the proceeds to which Humphries was entitled under the contract.

On July 15, 1963, Midtown paid off the loan in compliance with the letter assignment. The building was completed in the latter part of May and the bank has occupied it since that time. On August 2, 1963, Midtown received a letter from Travelers to which a reply was made on August 12th, acknowledging the letter of August 2, 1963, enclosing Travelers record of final billing and admitting

---

1. CONTRACT BOND: "KNOW ALL MEN BY THESE PRESENTS, That we, W. Larry Humphries, Inc., called the Principal, and The Travelers Indemnity Company, called the Surety, are held firmly bound unto Midtown Bank of Miami, Miami, Florida, called the Obligee in the sum of Sixty-One Thousand One Hundred Thirty-Five Dollars ($61,-135.00), for the payment whereof said Principal and Surety bind themselves firmly by these presents.

"WHEREAS, the Principal has, by written Agreement, dated March 7, 1963, entered into a contract with the Obligee for Construction of building, 14th Avenue and 20th Street (N.W.), a copy of which is by reference made a part hereof;

"Now, THEREFORE, the condition of this obligation is such, that if the Principal shall faithfully perform the contract on his part, free and clear of all liens arising out of claims for labor and materials entering into the construction, and indemnify and save harmless the Obligee from all loss, cost or damage which he may suffer by reason of the failure so to do, then this obligation shall be void; otherwise to remain in full force and effect.

"PROVIDED HOWEVER, that no suit be brought on this bond after the 7th day of March, 1964.

"SIGNED, SEALED AND DATED this 6th day of March, 1963."

2. "June 21, 1963, Mr. T. F. Dunlap, President, Midtown Bank of Miami, 1400 N.W. 20 Street, Miami, Florida. Dear Mr. Dunlap: Please be advised that I have assigned the contract for the building of Midtown Bank of Miami to Riverside Bank as security for two loans totaling $12,000.00 plus interest. It is requested that these two loans be paid in full from the proceeds of the final draw on the contract. Very truly yours, W. LARRY HUMPHRIES, INC. BY: ILLEGIBLE President."

having on hand and owing on the contract the sum of $1,626.19.[3]

Humphries completed the construction of the building, but defaulted in not being able to pay the claims of suppliers and materialmen,[4] which bills in the sum of $26,472.74 were paid by Travelers under the conditions and provisions of the bond. Both Midtown and Riverside contend that the first time they received knowledge of default on the part of Humphries and knowledge of the general indemnity agreement entered into by Humphries and Travelers was the letter of August 2, 1963.

Travelers does not make the contention that the assignment of June 21, 1963, from Humphries to Riverside was invalid; but only that said assignment was inferior to the equitable lien created by the surety's performance under the bond and the indemnity agreement executed by Humphries for the benefit of Travelers, January 30, 1961.[5]

The questions before this court are:

1. Was the trial court correct in granting the motion for summary judgment [6] in favor of Travelers, awarding damages in the sum of $13,626.19, the remaining amount owed by Midtown under

---

3. "August 12, 1963, Mr. G. W. Hill, Adjuster, The Travelers Indemnity Company, First National Bank Building, 351 S. W. Second Street, Miami 32, Florida, Dear Mr. Hill: W. Larry Humphries, Inc., Bond No. 1060054. We acknowledge your letter of August 2, 1963, enclosing your record of final billing on Midtown Bank of Miami. According to our records the amount now owing on this contract is $1,626.19. The contract was assigned to Riverside Bank for two loans totaling $12,000.00. The loans were paid at maturity, on July 15, 1963. Final billing has not been received from the architect, Mr. Loyd Frank Vann. Very truly yours, (Signed) ILLEGIBLE Vice President."

4. "On July 26th Mr. Humphries advised Travelers that there was a total amount of unpaid bills in the amount of $26,-472.74."

5. "The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract, including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof."

6. "SUMMARY FINAL JUDGMENT (Number and Title Omitted) Filed: Nov. 10, 1964. THIS CAUSE came on to be heard upon the Motion of the Plaintiff, THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation authorized to do business in the State of Florida, for entry of Summary Final Judgment against the Defendants, MIDTOWN BANK OF MIAMI, a Florida corporation, and RIVERSIDE BANK, a Florida corporation, and upon the ore tenus motion of said Defendants for Summary Final Judgment in their favor, and the court having been advised in the premises and having heard argument of respective counsel, finds that the pleadings, depositions and the admissions disclose that there is no genuine material issue as to any fact and that Summary Final Judgment should be entered against the Defendant, MIDTOWN BANK OF MIAMI, a Florida corporation, and that Summary Final Judgment should be entered in favor of RIVERSIDE BANK, it is, therefore, "ORDERED AND ADJUDGED as follows: 1. That Summary Final Judgment be and the same is hereby entered in favor of the Plaintiff, THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation authorized to do business in the State of Florida against the MIDTOWN BANK OF MIAMI, a Florida corporation and the Plaintiff, THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation authorized to do business in the State of Florida do have of and recover from the Defendant, MIDTOWN BANK OF FLORIDA, a Florida corporation, the sum of THIRTEEN THOUSAND SIX HUNDRED TWENTY-SIX AND 19/100 DOLLARS ($13,626.19), together with interest on said sum at the legal rate from September 10, 1963, until paid,

the contract prior to July 15, 1963, and before Midtown honored the assignment to Riverside and paid Riverside the amount of the loan of $12,000.00?

2. Was the trial court correct in granting the motion for summary judgment in favor of Riverside and against Travelers?

We answer question number one NO and question number two YES.

■ The law is clear that where a surety makes good under its contract of suretyship upon default of its principal, the surety acquires an equitable lien against any sum due its principal remaining in the hands of the one for whose protection the bond was written, and such claim of the surety is superior to any subsequent assignment by the principal to a third person even where such assignment was made prior to the default and payment by the sureties. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); Henningsen v. United States Fidelity & Guaranty Company, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Prairie State Nat. Bank of Chicago v. United States, 164 U. S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); United States Fidelity & Guaranty Co. v. United States, 10 Cir. 1952, 201 F.2d 118; Union Indemnity Co. v. City of Smyrna, 100 Fla. 980, 130 So. 453; Commercial Bank in Panama City v. Board of Public Inst., Fla.1951, 55 So.2d 552.

The question is whether the facts in our case fit within this general principal of suretyship law? Travelers contends that they do, but in saying this Travelers takes the position that Midtown and Riverside "knew" or "should have known" of Humphries default at the time the $12,000.00 assignment was honored and paid; or that Midtown and Riverside, having no knowledge of the default of Humphries on July 15, 1963, the time of the payment of the assignment, was immaterial because of the surety's superior claim. With this position we cannot agree.

■ Travelers rights under the bond and the general assignment agreement of January 30, 1961, depend upon Humphries making default. Prior to default, Travelers has no rights. Therefore, the date of default of Humphries and the knowledge thereof by Midtown and Riverside becomes highly relevant. Humphries completed all of the construction work on the bank building but defaulted in paying some of the bills for supplies and materials. What is the date of default? Travelers says, ipse dixit, July 15, 1963, but offers no proof as far as we can tell from the record, except counsel for Travelers mentions in the form of a question to the witness Dunlap that on July 26, 1963, Mr. Humphries advised Travelers that there was a total amount of unpaid bills in the amount of $26,472.-74; we assume that Travelers acquired its first knowledge of any default by Humphries on July 26th, and Midtown and Riverside could hardly be expected to have knowledge of Humphries default sooner than Travelers. Midtown and Riverside say their first knowledge of default in the payment of bills by Humphries was the letter of August 2, 1963 from Travelers. The assignment made by Humphries for the benefit of Riverside on June 21, 1963, was honored and paid by Midtown to Riverside eleven days before Travelers had knowledge of Humphries' default, and eighteen days prior to notification being given Midtown by Travelers of Humphries default.

and costs in this matter in the amount of FORTY-NINE AND 66/100 DOLLARS ($49.66) to be taxed herein, for all of which let execution issue in accordance with the law. 2. That Summary Final Judgment be and the same is hereby entered in favor of RIVERSIDE BANK, a Florida corporation, and the Complaint of the Plaintiff, THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation authorized to do business in the State of Florida, be and the same is hereby dismissed with prejudice, and the said RIVERSIDE BANK, a Florida corporation, shall go hence without day. DONE AND ORDERED in Chambers in Miami, Florida, this 9th day of November, 1964. (Signed) DAVID W. DYER, Chief Judge."

As to the validity of the assignment made by Humphries to Riverside no question is raised, and it having been paid on July 15, 1963, some eighteen days before knowledge was received by Riverside and Midtown of default by Humphries on August 2, 1963, Midtown did not have on hand the $12,000.00 in funds. Not having such funds on hand and not having disposed of the funds illegally [fraudulently], Travelers does not have a cause of action against either Midtown or Riverside. Massachusetts Bonding & Ins. Co. v. State of New York, 2 Cir. 1958, 259 F.2d 33; California Bank v. United States Fidelity & Guaranty Co., 9 Cir. 1942, 129 F.2d 751.

Massachusetts Bonding & Ins. Co. v. State of New York, supra, states the general law that a surety's right to funds in the hands of its principal, the trustee in bankruptcy or a stakeholder are superior to those of an assignee; but the case also holds at page 37:

"Of course the surety's rights might be defeated if the payment is received by the principal, who then pays it to another of his creditors who is unaware of the surety's rights."

California Bank v. United States Fidelity & Guaranty Co., supra, is somewhat similar in facts to our case. The California Bank, an assignee of Anderson, who had contracted with the United States to build certain buildings and obtained performance bonds from the United States Fidelity & Guaranty Co. Anderson owed the California Bank $12,114.34 which he paid when he received on June 30, 1938 under the contract a payment of $28,815.00. At the time, Anderson owed that amount and more to persons supplying labor and materials. The surety brought suit against Anderson and California Bank asserting that the money paid the California Bank was part of a sum which Anderson had assigned to the surety. Anderson did not appear at the trial and judgment by the trial court was entered against Anderson and for the United States Fidelity & Guaranty Co. On appeal appellee contended, first, that the $12,114.34 then in appellant's hands was still a part of the fund and, second, that appellee was entitled to have its claim paid from that part of the fund. The Ninth Circuit Court of Appeals held at page 754:

"The $12,114.34 would still be a part of the fund if it were still in the hands of the United States * * * in the hands of Anderson's trustee in bankruptcy * * * or in the hands of a receiver * * * or in the hands of a stakeholder * * *; but the $12,114.-34 is not in the hands of the United States, or of a trustee, receiver or stakeholder. It is in appellant's hands."

Further, at page 755:

"Appellant received the $12,114.34 from Anderson on June 30, 1938, in payment of a debt of $12,114.34 then due and owing by Anderson to appellant. As to the existence, validity and bona fide character of the debt, no question is raised. At the time it received the $12,114.34, appellant knew that Anderson had received it from the United States under the aforesaid contracts, but appellant had no notice or knowledge of Anderson's default until July 19, 1938—nineteen days after it received the $12,114.34. Thus appellant received the $12,114.34 without notice or knowledge that it was part of a fund in which appellee had, or might thereafter acquire, a superior right. We hold, therefore, that appellee is not entitled to recover any part of the $12,114.34 from appellant. [citations in footnote 7]." [7]

The Court concluded,

"Appellee's right in the fund was acquired by subrogation long after appellant received the $12,114.34. Appellee, however, contends that its right

7. Kane v. First National Bank, 5 Cir., 56 F.2d 534, 85 A.L.R. 362; Third National Bank v. Detroit Fidelity & Surety Co., 5 Cir., 65 F.2d 548; Fidelity & Deposit Co. v. Union State Bank, D.C.Minn., 21 F.2d 102, 104–106; Maryland Casualty Co. v. Lincoln Bank & Trust Co., D.C. W.D.Ky., 40 F.Supp. 782, 785. See also, American Surety Co. v. Bank of Italy, 63 Cal.App. 149, 218 P. 466.

relates back to the date of the bonds. That is true as to Anderson and as to claimants standing in Anderson's shoes * * * but not as to appellant; for the doctrine of relation cannot be used by a subrogee for the purpose of recovering money paid to a creditor without notice, in satisfaction of a just debt, prior to the maturing of any right of subrogation. [citations in footnote]." [8] Id. at 755.

Thus, had Midtown paid Humphries in full, $13,626.19, prior to August 2, 1963, Midtown would not have been liable to Travelers. Humphries could have paid his loan to Riverside rather than turning the money over to Travelers as the contractor would have been required to do under the indemnity agreement. This would be a matter between Travelers and Humphries and of absolutely no concern to Midtown and Riverside.

■ Applying the general rule of suretyship law as stated above, Travelers' superior equitable lien and right of subrogation applies only to funds remaining in the hands of Midtown after actual notice of Travelers' claim and Humphries' default. The court would be required to determine the priority of claims [Travelers v. Riverside] when money that is owed to the contractor [Humphries] remains in the hands of the owner [Midtown]. Under such a fact situation it is undisputed that the surety [Travelers] has priority by being a subrogee and an equitable lien holder under the bond and general indemnity agreement. Had the $13,626.19 remained in the hands of Midtown on August 2, 1963, the date of the notification by Travelers to Midtown of Humphries' default, and had a suit been brought for a determination of the priority of the claims of Riverside and Travelers, under Pearlman v. Reliance Insurance Co., supra; Prairie State National Bank v. United States, supra; and Henningsen v. United States Fidelity & Guaranty Co., supra, Travelers would prevail.

8. Fidelity & Deposit Co. v. Union State Bank, supra. See, also, United States Fidelity & Guaranty Co. v. Wooldridge,

However, this is not the fact situation and Travelers cannot stretch the facts in order to fit the law. Funds do not remain in the hands of Midtown, the one whose protection the bond was written, other than the $1,626.19, to which Travelers is entitled.

Therefore, the trial courts judgment will be reversed and remanded as to that part of the judgment in favor of Travelers against Midtown, but will be affirmed as to that part in favor of Riverside against Travelers.

The judgment of the District Court is reversed and the cause is remanded with directions to enter a judgment for Travelers in the sum of One Thousand Six Hundred Twenty-six and 19/100 ($1,626.19) Dollars.

268 U.S. 234, 238, 45 S.Ct. 489, 69 L.Ed. 932, 40 A.L.R. 1094.